IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FAWN KUZMINSKI, ADMINISTRATOR OF THE ESTATE OF JAMES KUZMINSKI, DECEASED, <br>    Plaintiff <br> v. <br><br> WARREN COUNTY, <br> KENNETH KLAKAMP, Warden, <br> JON COLLINS, Warden, <br> and LAURA MCDUNN, Counselor, <br>    Defendants. | Civil Division <br><br><br><br><br> No.   1:18-cv-57 <br><br><br><br><br><br> Jury Trial Demanded |

# **COMPLAINT**

## I.  PRELIMINARY STATEMENT

1. This is a civil rights action in which the Plaintiff, Fawn Kuzminski, Administrator of the Estate of James Kuzminski seeks relief for the Defendants' violation of James Kuzminski's rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, [ADA] 42 U.S.C. §§ 12101, et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and rights secured by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution. The Plaintiff seeks damages, compensatory and punitive, affirmative and equitable relief, and award of costs, interest and attorney's fees, and other and further relief as this Court deems just and equitable.

## II. JURISDICTION AND VENUE

2. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 (a)(3) and (4), this being an action seeking redress for violation of James Kuzminski's constitutional and civil rights.

3. Jurisdiction is also invoked herein pursuant to the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

4.     Venue is proper for the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C § 1391(b).

### III. JURY TRIAL DEMANDED

5.     Plaintiff demands a trial by jury on each of the causes of actions pleaded herein.

### IV. PARTIES

6.     James Kuzminski, ("Decedent"), at all times relevant herein, was a resident of the Commonwealth of Pennsylvania, housed at the Warren County Jail in Warren, Pennsylvania. He died on January 26, 2018 at the age of 57.

7.     Plaintiff, Fawn Kuzminski, wife of the Decedent, James Kuzminski, is an adult individual who resides in Warren County, Pennsylvania.

8.     Plaintiff, Fawn Kuzminski, pursuant to letters of Administration issued on February 16, 2018 was appointed Administrator of the Estate of James Kuzminski.

9.     At all times relevant, James Kuzminski was a "qualified individual" with a disability under the ADA and Rehabilitation Act in that he had been diagnosed with Huntington's Disease. He had a physical and mental impairment that substantially limited major life activities, including his inability to feed himself, to care for himself and to effectively communicate; he had a record of such impairment; and he was regarded as having such impairments.

10.    Defendant Warren County is a municipal entity created and authorized under the laws of the Commonwealth of Pennsylvania. It is authorized by law to operate a jail to house inmates and detainees.

**11.** Defendant Warren County operates the Warren County Jail ("Jail"), located in Warren, Pennsylvania.

**12.** Defendant Kenneth Klakamp was the Warden of the Warren County Jail during the time of Decedent's confinement until November 2017. He is being sued in his official and individual capacity.

**13.** Defendant Jon Collins was the Deputy Warden at Warren County Jail at the time of Decedent's confinement and then assumed the duties as Warden from November 23, 2016 through the time of Decedent's release from the Jail on or about February 21, 2017.

**14.** Defendant Laura McDunn at all relevant times herein was employed as the jail counselor at Warren County Jail.

**15.** Defendants Klakamp, Collins, and McDunn were, at all times relevant, acting under color of state law as officers, employees and agents of the of the Defendant Warren County. These Defendants are being sued individually and in their official capacity.

**16.** At all times relevant to the Complaint, Defendants Klakamp, Collins and McDunn were acting as agents, servants, and/or employees of defendant Warren County, and were acting within the scope and course of their employment, and under the direct control and supervision of defendant Warren County.

**17.** At all times relevant to this Complaint, all defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to Decedent.

### V.  FACTS

**18.** On February 22, 2016, Decedent was arrested and taken to the Warren County Jail, where he was held by Defendants until he was released on February 21, 2017.

3

19. Decedent was placed in isolation in the Jail from February 22, 2016 through February 21, 2017, a period of one (1) year.

20. Defendants knew or should have known Decedent suffered from Huntington's Disease and that he needed reasonable accommodations. Decedent had been diagnosed with Huntington's Disease many years before his incarceration and he was fully symptomatic with obvious signs of impairment.

21. Defendants decided to place Decedent in isolation for one (1) year because of his disability.

22. Defendant counselor, Laura McDunn, stated to Decedent's family members that she did not know how to handle an inmate with Huntington's, so Decedent was placed into isolation.

23. Food was withheld from Decedent so that he would not make a mess in his cell.

24. Decedent was in solitary confinement in a cell with a steel door for one (1) year.

25. Lighting was on in the isolation cell 24 hours/ 7 days a week.

26. Jail staff treated Decedent like a caged animal.

27. When the steel door to Decedent's isolation cell was opened, it smelled awful, "like a dairy farm", in the words of one inmate who delivered food to Decedent.

28. Decedent rarely got a shower.

29. Jail staff rarely cleaned Decedent's isolation cell.

30. Decedent sat in his own filth for days at a time.

31. The jail staff hosed down Decedent infrequently.

32. Decedent could be heard in his isolation cell crying out for food.

33. Decedent acted like he was in a lot of pain.

**34.** Decedent could not feed himself without assistance due to Huntington's Disease, which the Defendants knew or should have known.

**35.** After Decedent was hosed down in the showers, he would be taken outside without a coat or hat. When he returned to his cell, his hair and his beard were frozen and he was shaking from the cold weather.

**36.** Laura McDunn refused to file a 302 Petition for Decedent to obtain mental health treatment on an involuntary basis until his last day in Warren County Jail, at which time Decedent was transferred to Warren General Hospital, where he received humane and proper care.

**37.** Decedent was incapable of caring for himself because of Huntington's Disease.

**38.** Decedent was incontinent because of Huntington's Disease.

**39.** Decedent's personal hygiene in Warren County Jail was deplorable. He often was forced to sit in his excrement in the isolation cell.

**40.** Decedent's hair, beard, and nails were never trimmed during his confinement in the Warren County Jail.

**41.** Decedent's appearance chronically looked at visitation that he was being neglected in the Warren County Jail.

**42.** On February 23, 2016, Plaintiff went to the Warren County Jail and had a long discussion with Defendant Laura McDunn, the jail counselor.

**43.** Plaintiff described in detail Decedent's background, his diagnosis of Huntington's Disease and what the Disease is and how it affects the Decedent.

**44.** Patients with Huntington's Disease have a need for additional nourishment, requiring approximately 5,000 calories daily because of their energy needs.

**45.** The Defendants know or should have known about the Decedent's need for daily caloric intake of the extra food due to his Huntington's Disease, especially because Decedent's family members and others placed them on notice about this requirement.

**46.** Nonetheless, Decedent consistently complained about being hungry and wanting food while confined in Warren County Jail for one (1) year.

**47.** On March 3, 2016, Warren County Common Pleas Judge Maureen A. Skerda granted a bail motion filed by Decedent's public defender, modifying his bail to "unsecured provided that he resides in a supervised living setting" and "It is further ordered, upon receipt of this order the Defendant should be released from the Warren County Prison, forthwith." Decedent was not released until February 21, 2017.

**48.** On or about March 31, 2016, Decedent entered a guilty plea to Disorderly Conduct, a third degree misdemeanor.

**49.** On or about April 22, 2016, Judge Skerda imposed a sentence of confinement with a minimum of 61 days and a maximum of one (1) year.

### IV. HUNTINGTON'S DISEASE

**50.** Huntington's Disease is a rare genetic disorder that is unrelenting and eventually leads to death. It is an inherited disease that causes the progressive breakdown of nerve cells in the brain.

**51.** The first sign of Huntington's Disease is an involuntary movement abnormality. Psychiatric symptoms can occur at any time during the Disease, including psychosis. Patients' cognitive abilities are affected and eventually memory problems lead to dementia. Patients can

also experience difficulty swallowing and breathing. A description of Huntington's Disease symptoms from the Mayo Clinic is attached hereto as Exhibit A.

52. Persons with Huntington's Disease use a greater amount of energy to perform ordinary daily activities, and fatigue is another significant cause of behavior problems.

53. Hunger can be a significant cause of behavior problems in Huntington's Disease. Persons with Huntington's Disease need additional calories to perform the ordinary activities of life. They are often less able to identify hunger, need more time to eat, may be easily distracted while eating and may have swallowing problems that interfere with getting enough nutrition. If possible, it should be determined how much nutrition the person with Huntington's Disease is actually getting. The help of a speech-language pathologist and dietician may be necessary to ensure that the person with Huntington's Disease is getting enough calories.

54. On July 22, 2016, Dr. Ernesto Roederer conducted a psychiatric evaluation of Decedent at the Warren County Prison, and he prepared a report for the Warren County Jail.

55. Based upon his examination and review of medical records and notes from Warren County Jail, Dr. Roederer made the following diagnoses: Huntington's Chorea, Cognitive Disorder, Major Cognitive Neuro- Cognitive Disorder due to Huntington's with behavioral disturbance, Bipolar Disorder, unspecified.

56. Dr. Roederer noted in his report that the Decedent "exhibits significant agitation and has apparently exhibited significant cognitive decline."

57. Dr. Roederer stated in his report that Decedent was not able to complete the formal mental status exam.

58. Dr. Roederer made recommendations to Warren County Jail that, among other items, Decedent's medication be converted from pills to elixir because of Decedent's difficulty in

swallowing, and he encouraged staff at the Jail to increase Decedent's caloric intake because patients with Huntington's often require double the caloric intake because of the Disease and the energy expenditure.

59. After this evaluation, Decedent spent seven (7) more months in the Warren County Jail hungry, living in squalid, inhumane conditions in his isolation cell.

60. At the expiration of his maximum sentence, the Defendants on or about February 21, 2017 filed a petition for involuntary commitment of Decedent to Warren General Hospital, and Decedent was released from Warren County Jail to Warren General Hospital. Within two (2) days of his release from Jail, the Court determined that Decedent was severely mentally disabled.

61. The Defendant McDunn acknowledged in writing at the time of the Decedent's transfer from the Warren County Jail to the Warren General Hospital that the Decedent's Huntington's Disease had caused significant deterioration in his ability to function and to take care of himself. She stated that he rarely spoke in sentences and that there was uncertainty as to whether he understood questions posed to him. She further stated that the Decedent's ability to care for himself had not improved, that he could not use silverware, could not open milk cartons, paper bags or sandwich bags. In addition, the Defendant McDunn stated that he was incontinent, and could not take care of his own hygiene, medical, nutritional, and safety needs.

62. Decedent's stay at Warren General Hospital was extended pursuant to a § 303 petition under the Mental Health Procedures Act of 1976, and Decedent continued to receive appropriate medical treatment, therapy and personal care at Warren General Hospital.

63. Thereafter, Decedent was transferred to Rosemont Care & Rehabilitation Center in Bryn Mawr, Pennsylvania where he received care and treatment for his Huntington's Disease until the time of his death on January 26, 2018 due to Huntington's Disease.

64. Decedent was denied equal access to church services, the library, dining, recreation area, counseling, adequate showers, medical treatment, as well as other services and programs described infra.

65. Defendants' actions subjected Decedent to intentional discrimination based on his disability.

66. As a result of Defendants' actions, their failures to act, and their policies and practices, Decedent suffered physical and emotional injuries and pain, neglect, humiliation, embarrassment, and anxiety.

67. Plaintiff brings this action on behalf of the Estate of James Kuzminski, pursuant to the law of the Commonwealth of Pennsylvania, 20 Pa. C.S.A. § 3373 et al, pertaining to survival actions.

## VI. FIRST CAUSE OF ACTION

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT (ADA)

68. Plaintiff incorporates paragraphs 1 through 67 above as if fully set forth herein.

69. Decedent is a qualified individual with a disability as that term is used by 42 U.S.C. § 12131 and 12132 of the American with Disabilities Act ("ADA"), and the Defendants knew or should have known of his disability – Huntington's Disease and his concomitant physical and mental impairments.

70. Defendant Warren County is a public entity covered by Title II of the Americans with Disabilities Act (42 U.S.C. § 12131).

71. Defendant Warren County was responsible for operating, managing and supervising the Warren County Jail ("Jail") at all relevant times herein, which is a public entity covered by Title II.

72. Defendant's failure to provide adequate nutrition and food services, access to the Jail's other facilities, television room, church, social activities, adequate and timely medical care and medication, the right to personal care and hygiene, the right to treatment by qualified staff, the right to counseling services to Decedent and the solitary confinement in Jail in 2016 and 2017 violated the prohibition against discrimination based on disability contained in Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 and its implementing regulations (28 C.F.R. Part 35).

73. Defendants' failures on the same basis and subject to the same conditions and restrictions Defendants applied to other inmates, violated the prohibition against discrimination based on disability contained in Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 and its implementing regulations (28 C.F.R Part 35) when he was held in the Jail in 2016 and 2017. Defendants' actions, omissions, policies and practices discriminated against Plaintiff on the basis of disability and denied him the equal benefit of its services, programs and activities in violation of Title II of Americans with Disabilities Act, 42 U.S.C. § 12132 and its implementing regulations (28 C.F.R. Part 35).

74. As a result of Defendants' intentional discrimination, actions, omissions, policies and practices, and its violations of Title II of Americans with Disabilities Act, described in this Complaint, Decedent suffered the harm described above in this Complaint.

## VII. SECOND CAUSE OF ACTION

## VIOLATIONS OF THE FEDERAL REHABILITATION ACT

## SECTION 504

75. Plaintiff incorporates paragraphs 1 through 74 above as if fully set forth herein.

76. To the best of Plaintiff's beliefs, Defendant Warren County in an entity which receives funding from the United States Government for the operation of Warren County Jail and is, therefore, covered by the Federal Rehabilitation Act (29 U.S.C. § 794).

77. Decedent is a qualified individual with a disability as that term is used by 29 U.S.C. § 794.

78. Defendants' failure to provide adequate nutrition and food services, access to the Jail's other facilities, television room, church, social activities, adequate and timely medical care and medication, the right to personal care and hygiene, the right to treatment by qualified staff, the right to counseling services and the solitary confinement violated the prohibition against discrimination based on disability contained in the Federal Rehabilitation Act (29 U.S.C § 794) and its implementing regulations.

79. Defendants' failure to provide on the same basis and subject to the same conditions and restrictions Defendants applied to other inmates during his one- year incarceration violated the prohibition against discrimination based on disability contained in the Federal Rehabilitation Act (29 U.S.C. § 794) and its implementing regulations.

80. As a result of Defendants' intentional discrimination, actions, omissions, policies and practices, and its violations of the Federal Rehabilitation Act, described in Complaint, Decedent suffered harm described above in this Complaint.

## VIII. COUNT THREE

## CIVIL RIGHTS VIOLATIONS AGAINST ALL INDIVIDUAL DEFENDANTS

## 42 U.S.C. § 1983

81.     Plaintiff incorporates paragraphs 1 through 80 as if fully set forth herein.

82.     On or about February 22, 2016, Decedent entered the Jail as an inmate, where he was held incarcerated first as a pretrial detainee and later as a convicted prisoner after he was sentenced for his plea to Disorderly Conduct.

83.     Due to Decedent's Huntington Disease, the Defendants were aware of his lack of ability to care for himself, to feed himself, to effectively communicate and that he had multiple physical and mental impairments substantially limiting his activities.

84.     Notwithstanding the above, Defendants Klakamp, Collins and McDunn, were responsible for classifying and housing Decedent in isolation, resulting in punishment of Decedent.

85.     The law was well established as of February 22, 2016 that pretrial detainees cannot be punished under the Due Process Clause of the 14th Amendment.

86.     The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with basic necessities of life, such as adequate food, sanitation and adequate medical care, which prisoners are entitled to as the minimal civilized measures of life's necessities, which Defendants failed to provide.

87.     Defendants subjected Decedent to cruel and unusual punishment, knowing that he suffered from Huntington's Disease, and exhibited reckless and/or deliberate indifference to Decedent's serious medical needs, and placed him in solitary confinement for one (1) year.

88.     While confined in isolation, Decedent was subject to constant light for one (1) year.

89.     These isolation conditions and the continuing denial under Title II of the ADA and Section 504 constituted punishment and deprivation of his liberty under the Due Process Clause.

90.     These aforesaid conditions caused by the Defendants violated Decedent's rights under the Equal Protection Clause and the Due Process Clause in the Fourteenth Amendment on the basis of willful discrimination against Plaintiff as a disabled person.

91.     The conduct and actions of Defendants, Klakamp, Collins and McDunn, acting under color of state law, was not done in good faith and was done with reckless and/or deliberate indifference to Decedent's rights, and was done in violation of Decedent's federal rights as guaranteed under 42 U.S.C. § 1983, the Fifth, Eighth, and Fourteenth Amendment to the United States Constitution, Title II of the ADA, and Section 504.

92.     As a direct and proximate result of the Defendant's wrongful policies, practices, customs and usages complained herein, Decedent suffered physical and mental and emotional injury and pain, anxiety, mental anguish, suffering, humiliation and embarrassment.

IX.  COUNT FOUR

**CIVIL RIGHTS VIOLATIONS AGAINST DEFENDANT WARREN COUNTY**

**42 U.S.C. § 1983**

93.     Plaintiff incorporates paragraphs 1 through 92 above as if fully set forth herein.

94.     At all times material to this complaint, Defendant, Warren County had in effect *de facto* policies, practices, customs, and usages that were a direct proximate cause of the unconstitutional conduct of Defendants Klakamp, Collins and McDunn, including but not limited to the unconstitutional classification of Decedent to be held in isolation for one (1) year, the failure to provide adequate food as required by Title II of the ADA and Section 504., the failure

to provide adequate medical care, assistance in feeding Decedent, delay of medication in a form that Decedent could utilize, and the right to basic sanitation and personal hygiene/showers.

95. Defendant Warren County failed to establish guidelines for, and/or train, supervise or educate its agents, and employees including Defendants, about the correct practices and procedures in the classification, housing, and provision of services, thereby permitting the Defendant to be in a position to violate Plaintiff's federal constitutional and statutory rights, including punishment of him in solitary confinement and as a pretrial detainee, by failing to establish policies, practices and procedures to ensure that inmates at Warren County Jail received appropriate care for serious illnesses, and if necessary outside medical services; by failing to establish policies, practices, and procedures to provide basic necessities to disabled prisoners in order to prevent the harms described in Paragraphs 64, 72, 78 and 86.

96. Defendants Klakamp and Collins were official policymakers at the Jail for Defendant Warren County and despite the 2008 Policy setting forth the rights for disabled inmates, they were responsible for making choices to establish and/or acquiesce in the practice of not training staff to comply with Title II of the ADA Section 504 and by deliberately not planning for, budgeting, or providing for disabled inmates, such as Decedent.

97. The conduct of Warren County was done with deliberate indifference and was the direct and proximate cause of the punishment, physical and psychological harm, pain and suffering in violation of Decedent's federal rights as guaranteed by 42 U.S.C. §1983, the Due Process and Equal Protection Clauses in the Fourteenth Amendment, the Fifth Amendment, and the Eighth Amendment to the United States Constitution, Title II of the ADA, and Section 504.

**98.** As a direct proximate result of the Defendants' wrongful policies, practices, customs and usages complained herein, Decedent suffered physical, mental and emotional injury and pain, anxiety, mental anguish, suffering, humiliation and embarrassment.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff demands the following relief jointly and severally against all of the Defendants:

    A.    Injunctive relief;

    B.    Compensatory damages;

    C.    Punitive damages against the individual Defendants;

    D.    Costs and interests and attorney's fees; and

    E.    Such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Respectfully Submitted,
KUBINSKI, SUSKO & SCHONTHALER

By: s/Paul J. Susko
Paul J. Susko, Esquire
Pa. Supreme Court I.D. No. 25995
502 Parade Street
Erie, PA 16507
(814) 455-7612
(814) 461-8585
paul@ksslawfirm.com

DATED: February 21, 2018

*Attorney for Plaintiff*