## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FAWN KUZMINSKI, ADMINISTRATOR | : | Civil Division |
| OF THE ESTATE OF JAMES | : | |
| KUZMINSKI, DECEASED, | : | |
| Plaintiff | : | |
| v. | : | |
| | : | |
| WARREN COUNTY, | : | No. 1:18-cv-00057-LPL |
| KENNETH KLAKAMP, Warden, | : | |
| JON COLLINS, Warden, | : | |
| LAURA MCDUNN, Counselor, | : | |
| SENECA MEDICAL CENTER, LLC, | : | |
| DR. NORMAN K. BEALS III, MD, | : | |
| CHILDREN'S CENTER FOR | : | |
| TREATMENT AND EDUCATION | : | |
| D/B/A BEACON LIGHT BEHAVIORAL | : | |
| HEALTH SYSTEMS, an affiliate of | : | |
| JOURNEY HEALTH SYSTEM, | : | |
| DR. ERNESTO ROEDERER, MD, and | : | |
| DR. JOHN P. JOHN, MD | : | |
| Defendants. | : | Jury Trial Demanded |

## AMENDED COMPLAINT

## I. PRELIMINARY STATEMENT

**1.** This is a civil rights action in which the Plaintiff, Fawn Kuzminski, Administrator of the Estate of James Kuzminski seeks relief for the Defendants' violation of James Kuzminski's rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, [ADA] 42 U.S.C. §§ 12101, et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and rights secured by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution. The Plaintiff seeks damages, compensatory and punitive, affirmative and equitable relief, and award of costs, interest and attorney's fees, and other and further relief as this Court deems just and equitable.

## II. JURISDICTION AND VENUE

**2.**      Jurisdiction is invoked pursuant to 28 U.S.C §§ 1331 and 1343 (a)(3) and (4), this being an action seeking redress for violation of James Kuzminski's constitutional and civil rights.

**3.**      Jurisdiction is also invoked herein pursuant to the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

**4.**      Venue is proper for the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C § 1391(b).

## III. JURY TRIAL DEMANDED

**5.**      Plaintiff demands a trial by jury on each of the causes of actions pleaded herein.

## IV. PARTIES

**6.**      James Kuzminski, ("Decedent"), at all times relevant herein, was a resident of the Commonwealth of Pennsylvania, housed at the Warren County Jail in Warren, Pennsylvania. He died on January 26, 2018 at the age of 57.

**7.**      Plaintiff, Fawn Kuzminski, wife of the Decedent, James Kuzminski, is an adult individual who resides in Warren County, Pennsylvania.

**8.**      Plaintiff, Fawn Kuzminski, pursuant to letters of Administration issued on February 16, 2018 was appointed Administrator of the Estate of James Kuzminski.

**9.**      At all times relevant, James Kuzminski was a "qualified individual" with a disability under the ADA and Rehabilitation Act in that he had been diagnosed with Huntington's Disease. He had a physical and mental impairment that substantially limited major life activities, including his inability to feed himself, to care for himself and to effectively communicate; he had a record of such impairment; and he was regarded as having such impairments.

**10.**     Defendant Warren County is a municipal entity created and authorized under the laws of the Commonwealth of Pennsylvania. It is authorized by law to operate a jail to house inmates and detainees.

**11.**     Defendant Warren County operates the Warren County Jail ("Jail"), located in Warren, Pennsylvania. The Jail is also known as the Warren County Prison.

**12.**     Defendant Kenneth Klakamp was the Warden of the Warren County Jail during the time of Decedent's confinement until November 2017. He is being sued in his official and individual capacity.

**13.**     Defendant Jon Collins was the Deputy Warden at Warren County Jail at the time of Decedent's confinement and then assumed the duties as Warden from November 23, 2016 through the time of Decedent's release from the Jail on or about February 21, 2017.

**14.**     Defendant Laura McDunn at all relevant times herein was employed as the jail counselor at Warren County Jail.

**15.**     Defendants Klakamp, Collins, and McDunn were, at all times relevant, acting under color of state law as officers, employees and agents of the of the Defendant Warren County. These Defendants are being sued individually and in their official capacity.

**16.**     At all times relevant to the Complaint, Defendants Klakamp, Collins and McDunn were acting as agents, servants, and/or employees of defendant Warren County, and were acting within the scope and course of their employment, and under the direct control and supervision of defendant Warren County.

**17.**     Defendant Seneca Medical Center, LLC (hereinafter "Seneca Medical Center"), which has a principal place of business in Seneca, Pennsylvania, at all times relevant to this Complaint was the designated medical provider for inmates in the Jail. It is a corporation duly

organized under the laws of the Commonwealth of Pennsylvania, and is engaged in providing health care services to the public, maintaining its place of business at The Seneca Commons, 1 Park Way, Seneca, PA.

18.     At all times relevant to this Complaint, Defendant Dr. Norman K. Beals, III, MD was the medical director for Defendant Seneca Medical Center and assigned to provide medical services at the Warren County Jail.

19.     At all times relevant to this Complaint, Defendant Seneca Medical acted by and through its apparent or actual agents, servants and employees, including Norman K. Beals, III, MD, who was acting within the course and scope of his employment and/or agency.

20.     Defendant Children's Center for Treatment and Education D/B/A Beacon Light Behavioral Health System, an affiliate of Journey Health System (hereinafter "Beacon Light") is a corporation organized and existing under the laws of Pennsylvania and at all times relevant to the Complaint was the designated provider of mental health services for inmates at the Warren County Jail. Its administrative offices are located at 800 East Main Street, Bradford, PA, 16701.

21.     At all times relevant to this Complaint, Defendant Dr. Ernesto Roederer, MD was employed as a psychiatrist by Beacon Light.

22.     At all times relevant to this Complaint, Dr. John P. John, MD provided mental health services at the Warren County Jail for Beacon Light as a psychiatrist and as the Outpatient Clinical Medical Director, and was ostensibly employed by Beacon Light. Defendant John in addition was employed by Deerfield Behavioral Health of Warren, LLC, a corporation organized under the laws of the Commonwealth of Pennsylvania.

23.     At all times relevant to this Complaint, Defendant Beacon Light acted by and through its apparent or actual agents, servants and employees, including Ernesto Roederer, MD, and John P. John, MD who were acting within the course and scope of their employment and/or agency.

24.     At all times relevant to this Complaint, all Defendants acted under color of state law.

25.     At all times relevant to this Complaint, all Defendants acted in concert and conspiracy and were jointly and severely responsible for the harms caused to Decedent.

26.     At all times relevant to this Complaint, Defendant Beal was acting as agent, servant, and/or employee of Defendant Seneca and was acting within the scope and course of his employment, and under the direct control and supervision of Defendant Seneca. He is sued in his individual and official capacities.

27.     At all times relevant to the Complaint, Defendants Roederer and John were acting as agents, servants, and/or employees of Defendant Beacon Light and/or were acting in the scope or course of their employment and under the direct control and supervision of Defendant Beacon Light.  They are sued in their individual capacities.

28.     At all times relevant to this Complaint, all Defendants acted in concert and conspiracy and were jointly and severally responsible for the harms caused to Decedent.

## V.  FACTS

29.     On February 22, 2016, Decedent was arrested and taken to the Warren County Jail, where he was held by Defendants until he was released on February 21, 2017.

30.     Decedent was placed in isolation in the Jail from February 22, 2016 through February 21, 2017, a period of one (1) year.

31.     Defendants knew or should have known Decedent suffered from Huntington's Disease and that he needed reasonable accommodations. Decedent had been diagnosed with

5

Huntington's Disease many years before his incarceration and he was fully symptomatic with obvious signs of impairment.

**32.**     Defendants decided to place Decedent in isolation for one (1) year because of his disability.

**33.**     Defendant counselor, Laura McDunn, stated to Decedent's family members that she did not know how to handle an inmate with Huntington's, so Decedent was placed into isolation.

**34.**     Food was withheld from Decedent so that he would not make a mess in his cell.

**35.**     Decedent was in solitary confinement in a cell with a steel door for one (1) year.

**36.**     Lighting was on in the isolation cell 24 hours/ 7 days a week.

**37.**     Jail staff treated Decedent like a caged animal.

**38.**     When the steel door to Decedent's isolation cell was opened, it smelled awful, "like a dairy farm", in the words of one inmate who delivered food to Decedent.

**39.**     Decedent rarely got a shower, even though Defendant Collins had ordered that Decedent receive a daily shower, which did not occur and which was not monitored or enforced.

**40.**     Jail staff rarely cleaned Decedent's isolation cell.

**41.**     Decedent sat in his own filth for days at a time.

**42.**     The jail staff hosed down Decedent infrequently.

**43.**     Decedent could be heard in his isolation cell crying out for food.

**44.**     Decedent acted like he was in a lot of pain.

**45.**     Decedent could not feed himself without assistance due to Huntington's Disease, which the Defendants knew or should have known.

**46.**    After Decedent was hosed down in the showers, he would be taken outside without a coat or hat. When he returned to his cell, his hair and his beard were frozen and he was shaking from the cold weather.

**47.**    Laura McDunn refused to file a 302 Petition for Decedent to obtain mental health treatment on an involuntary basis until his last day in Warren County Jail, at which time Decedent was transferred to Warren General Hospital, where he received humane and proper care.

**48.**    Decedent was incapable of caring for himself because of Huntington's Disease.

**49.**    Decedent was incontinent because of Huntington's Disease.

**50.**    Decedent's personal hygiene in Warren County Jail was deplorable. He often was forced to sit in his excrement in the isolation cell.

**51.**    Decedent's hair, beard, and nails were never trimmed during his confinement in the Warren County Jail.

**52.**    Decedent's appearance chronically looked at visitation that he was being neglected in the Warren County Jail.

**53.**    On February 23, 2016, Plaintiff went to the Warren County Jail and had a long discussion with Defendant Laura McDunn, the jail counselor.

**54.**    Plaintiff described in detail Decedent's background, his diagnosis of Huntington's Disease and what the Disease is and how it affects the Decedent.

**55.**    Patients with Huntington's Disease have a need for additional nourishment, requiring approximately 5,000 calories daily because of their energy needs.

56.    The Defendants know or should have known about the Decedent's need for daily caloric intake of the extra food due to his Huntington's Disease, especially because Decedent's family members and others placed them on notice about this requirement.

57.    Nonetheless, Decedent consistently complained about being hungry and wanting food while confined in Warren County Jail for one (1) year.

58.    On March 3, 2016, Warren County Common Pleas Judge Maureen A. Skerda granted a bail motion filed by Decedent's public defender, modifying his bail to "unsecured provided that he resides in a supervised living setting" and "It is further ordered, upon receipt of this order the Defendant should be released from the Warren County Prison, forthwith." Decedent was not released until February 21, 2017.

59.    On or about March 31, 2016, Decedent entered a guilty plea to Disorderly Conduct, a third degree misdemeanor.

60.    On or about April 22, 2016, Judge Skerda imposed a sentence of confinement with a minimum of 61 days and a maximum of one (1) year.

## VI. HUNTINGTON'S DISEASE

61.    Huntington's Disease is a rare genetic disorder that is unrelenting and eventually leads to death. It is an inherited disease that causes the progressive breakdown of nerve cells in the brain.

62.    The first sign of Huntington's Disease is an involuntary movement abnormality. Psychiatric symptoms can occur at any time during the Disease, including psychosis. Patients' cognitive abilities are affected and eventually memory problems lead to dementia. Patients can also experience difficulty swallowing and breathing. A description of Huntington's Disease symptoms from the Mayo Clinic is attached hereto as Exhibit A.

**63.** Persons with Huntington's Disease use a greater amount of energy to perform ordinary daily activities, and fatigue is another significant cause of behavior problems.

**64.** Hunger can be a significant cause of behavior problems in Huntington's Disease. Persons with Huntington's Disease need additional calories to perform the ordinary activities of life. They are often less able to identify hunger, need more time to eat, may be easily distracted while eating and may have swallowing problems that interfere with getting enough nutrition. If possible, it should be determined how much nutrition the person with Huntington's Disease is actually getting. The help of a speech-language pathologist and dietician may be necessary to ensure that the person with Huntington's Disease is getting enough calories.

**65.** Even though Decedent had been confined in the Jail since on or about February 22, 2016 with knowledge that he had serious medical and mental health needs due to his Huntington's Disease and dementia, Decedent's intake session with Beacon Light personnel did not occur until July 14, 2016 according to Beacon Light outpatient records when Jeremy Holt, an outpatient therapist interviewed Decedent at the Jail.

**66.** In the Beacon Light progress noted dated 7/14/16, it was noted that: "James was not able to complete the intake process due to the level of de-compensation cognitively and verbally. His only response to questions and explanation by the therapist were 'yeah' and 'play volleyball.'"

**67.** On July 22, 2016, Defendant Dr. Ernesto Roederer, a psychiatrist, conducted a psychiatric evaluation of Decedent at the Warren County Prison, and he prepared a report several days later. This report was not shared with personnel at the Jail.

**68.** Based upon his examination and review of medical records and notes from Warren County Jail, Dr. Roederer made the following diagnoses: Huntington's Chorea, Cognitive

Disorder, Major Cognitive Neuro- Cognitive Disorder due to Huntington's with behavioral disturbance, Bipolar Disorder, unspecified.

**69.**    Dr. Roederer noted in his report that the Decedent "exhibits significant agitation and has apparently exhibited significant cognitive decline."

**70.**    Dr. Roederer stated in his report that Decedent was not able to complete the formal mental status exam.

**71.**    Dr. Roederer made recommendations to Warren County Jail that, among other items, Decedent's medication be converted from pills to elixir because of Decedent's difficulty in swallowing, and he encouraged staff at the Jail to increase Decedent's caloric intake because patients with Huntington's often require double the caloric intake because of the Disease and the energy expenditure.

**72.**    Despite the obvious serious medical need, the Defendant Roederer failed to consult with the prison doctor about Decedent's serious deterioration and the need to transfer him to a more appropriate facility to manage his Huntington's Disease and dementia.

**73.**    The Defendant Roederer failed to follow up with Decedent after the visit at the Jail on or about July 22, 2016, even though he noted in his report that only 10-20% of the Haldol medications were being administered.

**74.**    The Defendant Roederer failed to consult with Decedent's neurologist, Dr. William Esper or to make a request for his medical records.

**75.**    After Defendant Roederer's visit with the Decedent at the Jail on July 22, 2016, the monthly medication administration records for the Decedent contained the following entry:

> "PLEASE TRY TO GET THESE NEW MEDS INTO HIM THE NEW DR.
> IS TRYING TO EVENTUALLY GET HIM ON THE HALDOL
> INJECTION EVERY THREE WEEKS SO HE WILL BE ABLE TO GO
> TO A BETTER FACILITY, BUT HE HAS TO MAKE SURE HE TAKES

THE MEDS AS DIRECTED SO IF HE WILL NOT TAKE THE MEDICATION AT SIX AM THEN TRY AGAIN AT 12:00 IF HE WILL NOT TAKE THEM AT BEDTIME THEN TRY AT 1700 BUT PLEASE TRY… THANK YOU."

76.     Defendant's behaviors in Jail were secondary to his primary illness – Huntington's Disease, and if he had received proper medical management, he could have been transported to an appropriate facility well before serving 12 months in an isolation cell in the Jail, where he continued to be not properly medicated, not properly nourished and not properly cared for as to basic daily needs.

77.     Prisoners who possess psychiatric disorders have the right to treatment by qualified staff.

78.     Decedent was not seen again by a psychiatrist from Beacon Light, the Jail's mental health services provider, until September 19, 2016 when Defendant Dr. John, Beacon Light Psychiatrist and Outpatient Clinical Medical Director, visited Decedent at the Jail for the purpose of rendering a second psychiatric opinion in order to force Decedent to take his medications.

79.     However, it was not until **three (3) months later** – December 20, 2016 that Defendant John eventually faxed a letter to the Warren County Prison addressed "To Whom It May Concern:", at which time he ordered Haldol (psychotropic medication) injections for Decedent. Due to contradictory Jail records, the first injection either occurred the last week of December 2016 or in late January 2017.

80.     This delay contributed to the overall delay of ten (10) months before Decedent was medically managed with Haldol Decanoate injections, even though all of the Defendants knew or should have known that Decedent was suffering from advanced Huntington's Disease and dementia (and secondary behaviors – aggression and agitation), seriously impairing his judgment and cognitive faculties.

**81.**     After this evaluation, Decedent spent seven (7) more months locked up in the Warren County Jail, existing in squalid, inhumane conditions in his isolation cell.

**82.**     During Decedent's twelve (12) months of confinement in isolation while he deteriorated and decompensated, his weight was not monitored, no lab tests, EKG's, vital signs or periodic medical or medication checks were performed by the prison doctor, Dr. Beals or otherwise by a Seneca provider following prison intake at the outset of his incarceration.

**83.**     Prior to his incarceration, Decedent received treatment for his Huntington's Disease and dementia from Dr. William Esper, a UPMC neurologist in Erie, Pennsylvania who had changed his Haldol medication to oral solution because of swallowing difficulty.

**84.**     It is common for patients with advanced Huntington's Disease to have difficulty swallowing solid foods and their medications.

**85.**     The Defendant Beals never examined, evaluated, monitored, or otherwise treated the Decedent during his entire confinement even though he was the Jail's prison doctor and though he knew or should have known of Decedent's Huntington's Disease and dementia.

**86.**     There was a failure to order a swallowing screening for Decedent, who suffered advanced Huntington's Disease and dementia in order to assess his ability to swallow medications and food. None of the Defendant Doctors ordered this assessment, which further delayed Decedent being properly medicated and transferred to an appropriate facility from solitary confinement in the Jail.

**87.**     On March 16, 2016, Decedent was transported from the Jail for an outpatient examination with his neurologist, Dr. Esper.

**88.**     At no time during his confinement did any of the Defendants consult with Dr. Esper or make a request to obtain Decedent's medical records.

**89.**   On October 19, 2016, Decedent was scheduled to be transported from the Jail to see Dr. Esper as an outpatient.

**90.**   However, this visit did not occur because Decedent ended up on the floor at the Jail, bleeding from the nose after an encounter with several corrections officers, and he was returned to his isolation cell.

**91.**   Decedent's failure to see his neurologist was recorded as a "no show" because no one from the Jail contacted Dr. Esper's office to cancel the visit, and the visit was not rescheduled by the Defendants.

**92.**   At the expiration of his maximum sentence, the Defendants on or about February 21, 2017 filed a petition for involuntary commitment of Decedent to Warren General Hospital, and Decedent was released from Warren County Jail to Warren General Hospital. Within two (2) days of his release from Jail, the Court determined that Decedent was severely mentally disabled.

**93.**   The Defendant McDunn acknowledged in writing at the time of the Decedent's transfer from the Warren County Jail to the Warren General Hospital that the Decedent's Huntington's Disease had caused significant deterioration in his ability to function and to take care of himself. She stated that he rarely spoke in sentences and that there was uncertainty as to whether he understood questions posed to him. She further stated that the Decedent's ability to care for himself had not improved, that he could not use silverware, could not open milk cartons, paper bags or sandwich bags. In addition, the Defendant McDunn stated that he was incontinent, and could not take care of his own hygiene, medical, nutritional, and safety needs.

**94.**   Decedent's stay at Warren General Hospital was extended pursuant to a § 303 petition under the Mental Health Procedures Act of 1976, and Decedent continued to receive appropriate medical treatment, therapy and personal care at Warren General Hospital.

**95.**     Thereafter, Decedent was transferred to Rosemont Care & Rehabilitation Center in Bryn Mawr, Pennsylvania where he received care and treatment for his Huntington's Disease until the time of his death on January 26, 2018 due to Huntington's Disease.

**96.**     Decedent was denied equal access to church services, the library, dining, recreation area, counseling, adequate showers, medical treatment, as well as other services and programs described above.

**97.**     Defendants' actions subjected Decedent to intentional discrimination based on his disability.

**98.**     As a result of Defendants' actions, their failures to act, and their policies and practices, Decedent suffered physical and emotional injuries and pain, neglect, humiliation, embarrassment, and anxiety.

**99.**     Plaintiff brings this action on behalf of the Estate of James Kuzminski, pursuant to the law of the Commonwealth of Pennsylvania, 20 Pa. C.S.A. § 3373 et al, pertaining to survival actions.

## VII. FIRST CAUSE OF ACTION
## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT (ADA)

**100.**     Plaintiff incorporates paragraphs 1 through 99 above as if fully set forth herein.

**101.**     Decedent is a qualified individual with a disability as that term is used by 42 U.S.C. § 12131 and 12132 of the American with Disabilities Act ("ADA"), and the Defendants knew or should have known of his disability – Huntington's Disease and his concomitant physical and mental impairments.

**102.**     Defendant Warren County is a public entity covered by Title II of the Americans with Disabilities Act (42 U.S.C. § 12131).

103.    Defendant Warren County was responsible for operating, managing and supervising the Warren County Jail ("Jail") at all relevant times herein, which is a public entity covered by Title II.

104.    Defendant's failure to provide adequate nutrition and food services, access to the Jail's other facilities, television room, church, social activities, adequate and timely medical care and medication, the right to personal care and hygiene, the right to treatment by qualified staff, the right to counseling services to Decedent and the solitary confinement in Jail in 2016 and 2017 violated the prohibition against discrimination based on disability contained in Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 and its implementing regulations (28 C.F.R. Part 35).

105.    Defendants' failures on the same basis and subject to the same conditions and restrictions Defendants applied to other inmates, violated the prohibition against discrimination based on disability contained in Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 and its implementing regulations (28 C.F.R Part 35) when he was held in the Jail in 2016 and 2017. Defendants' actions, omissions, policies and practices discriminated against Plaintiff on the basis of disability and denied him the equal benefit of its services, programs and activities in violation of Title II of Americans with Disabilities Act, 42 U.S.C. § 12132 and its implementing regulations (28 C.F.R. Part 35).

106.    As a result of Defendants' intentional discrimination, actions, omissions, policies and practices, and its violations of Title II of Americans with Disabilities Act, described in this Complaint, Decedent suffered the harm described above in this Complaint.

## VIII. SECOND CAUSE OF ACTION
## VIOLATIONS OF THE FEDERAL REHABILITATION ACT
## SECTION 504

**107.**     Plaintiff incorporates paragraphs 1 through 106 above as if fully set forth herein.

**108.**     To the best of Plaintiff's beliefs, Defendant Warren County in an entity which receives funding from the United States Government for the operation of Warren County Jail and is, therefore, covered by the Federal Rehabilitation Act (29 U.S.C. § 794).

**109.**     Decedent is a qualified individual with a disability as that term is used by 29 U.S.C. § 794.

**110.**     Defendants' failure to provide adequate nutrition and food services, access to the Jail's other facilities, television room, church, social activities, adequate and timely medical care and medication, the right to personal care and hygiene, the right to treatment by qualified staff, the right to counseling services and the solitary confinement violated the prohibition against discrimination based on disability contained in the Federal Rehabilitation Act (29 U.S.C § 794) and its implementing regulations.

**111.**     Defendants' failure to provide on the same basis and subject to the same conditions and restrictions Defendants applied to other inmates during his one- year incarceration violated the prohibition against discrimination based on disability contained in the Federal Rehabilitation Act (29 U.S.C. § 794) and its implementing regulations.

**112.**     As a result of Defendants' intentional discrimination, actions, omissions, policies and practices, and its violations of the Federal Rehabilitation Act, described in Complaint, Decedent suffered harm described above in this Complaint.

## IX. COUNT THREE
## CIVIL RIGHTS VIOLATIONS AGAINST ALL INDIVIDUAL DEFENDANTS
## 42 U.S.C. § 1983

**113.**     Plaintiff incorporates paragraphs 1 through 112 as if fully set forth herein.

**114.**     On or about February 22, 2016, Decedent entered the Jail as an inmate, where he was held incarcerated first as a pretrial detainee and later as a convicted prisoner after he was sentenced for his plea to Disorderly Conduct.

**115.**     Due to Decedent's Huntington Disease, the Defendants were aware of his lack of ability to care for himself, to feed himself, to effectively communicate and that he had multiple physical and mental impairments substantially limiting his activities.

**116.**     Notwithstanding the above, Defendants Klakamp, Collins and McDunn, were responsible for classifying and housing Decedent in isolation, resulting in punishment of Decedent.

**117.**     The law was well established as of February 22, 2016 that pretrial detainees cannot be punished under the Due Process Clause of the 14th Amendment.

**118.**     The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with basic necessities of life, such as adequate food, sanitation and adequate medical care, which prisoners are entitled to as the minimal civilized measures of life's necessities, which Defendants failed to provide.

**119.**     Defendants subjected Decedent to cruel and unusual punishment, knowing that he suffered from Huntington's Disease, and exhibited reckless and/or deliberate indifference to Decedent's serious medical needs, and placed him in solitary confinement for one (1) year.

**120.**     While confined in isolation, Decedent was subject to constant light for one (1) year.

121.     These isolation conditions and the continuing denial under Title II of the ADA and Section 504 constituted punishment and deprivation of his liberty under the Due Process Clause.

122.     These aforesaid conditions caused by the Defendants violated Decedent's rights under the Equal Protection Clause and the Due Process Clause in the Fourteenth Amendment on the basis of willful discrimination against Plaintiff as a disabled person.

123.     The conduct and actions of Defendants, Klakamp, Collins and McDunn, acting under color of state law, was not done in good faith and was done with reckless and/or deliberate indifference to Decedent's rights, and was done in violation of Decedent's federal rights as guaranteed under 42 U.S.C. § 1983, the Fifth, Eighth, and Fourteenth Amendment to the United States Constitution, Title II of the ADA, and Section 504.

124.     As a direct and proximate result of the Defendant's wrongful policies, practices, customs and usages complained herein, Decedent suffered physical and mental and emotional injury and pain, anxiety, mental anguish, suffering, humiliation and embarrassment.

## X. COUNT FOUR
## CIVIL RIGHTS VIOLATIONS AGAINST DEFENDANT WARREN COUNTY
## 42 U.S.C. § 1983

125.     Plaintiff incorporates paragraphs 1 through 124 above as if fully set forth herein.

126.      At all times material to this complaint, Defendant, Warren County had in effect *de facto* policies, practices, customs, and usages that were a direct proximate cause of the unconstitutional conduct of Defendants Klakamp, Collins and McDunn, including but not limited to the unconstitutional classification of Decedent to be held in isolation for one (1) year, the failure to provide adequate food as required by Title II of the ADA and Section 504., the failure to provide adequate medical care, assistance in feeding Decedent, delay of medication in a form that Decedent could utilize, and the right to basic sanitation and personal hygiene/showers.

127.     Defendant Warren County failed to establish guidelines for, and/or train, supervise or educate its agents, and employees including Defendants, about the correct practices and procedures in the classification, housing, and provision of services, thereby permitting the Defendant to be in a position to violate Plaintiff's federal constitutional and statutory rights, including punishment of him in solitary confinement and as a pretrial detainee, by failing to establish policies, practices and procedures to ensure that inmates at Warren County Jail received appropriate care for serious illnesses, and if necessary outside medical services; by failing to establish policies, practices, and procedures to provide basic necessities to disabled prisoners in order to prevent the harms described in Paragraphs 96, 104, 110 and 118.

128.     Defendants Klakamp and Collins were official policymakers at the Jail for Defendant Warren County and despite the 2008 Policy setting forth the rights for disabled inmates, they were responsible for making choices to establish and/or acquiesce in the practice of not training staff to comply with Title II of the ADA Section 504 and by deliberately not planning for, budgeting, or providing for disabled inmates, such as Decedent.

129.     The conduct of Warren County was done with deliberate indifference and was the direct and proximate cause of the punishment, physical and psychological harm, pain and suffering in violation of Decedent's federal rights as guaranteed by 42 U.S.C. §1983, the Due Process and Equal Protection Clauses in the Fourteenth Amendment, the Fifth Amendment, and the Eighth Amendment to the United States Constitution, Title II of the ADA, and Section 504.

130.     As a direct proximate result of the Defendants' wrongful policies, practices, customs and usages complained herein, Decedent suffered physical, mental and emotional injury and pain, anxiety, mental anguish, suffering, humiliation and embarrassment.

## XI. COUNT FIVE
## PROFESSIONAL NEGLIGENCE
## PLAINTIFF V. DEFENDANTS BEACON LIGHT, JOHN AND ROEDERER
## [COLLECTIVELY REFERENCED AS "THE BEACON LIGHT DEFENDANTS"]

**131.** Plaintiff incorporates paragraphs 1 through 130 above as if fully set forth herein.

**132.** Decedent's negligence damages occurred as a result of Beacon Light and its employees and/or agents, including Defendants John and Roederer, who deviated from the standard of care.

**133.** At all times relevant, Defendant Beacon Light, its agents, servants, employees and ostensible agents, including Dr. Ernesto Roederer, MD and Dr. John P. John, MD, owed Decedent a duty of reasonable care.

**134.** Because the individual Defendants Roederer and John acting as an agent, servant, and/or employee of Defendant Beacon Light and because they were acting within the scope and course of their employment and under the direct control and supervision of Defendant Beacon Light, Defendant Beacon Light is liable to Plaintiff on the basis of *Respondeat superior* liability.

**135.** Said negligence included, but was not limited to:

    **a.** Beacon Light's failure to train its employees and agents adequately with respect to the evaluation and treatment of mentally ill inmates;

    **b.** Beacon Light's failure to implement procedures for the timely and adequate mental health evaluation of inmates;

    **c.** the Beacon Light Defendants' failure to obtain or review Decedent's medical records;

    **d.** the Beacon Light Defendants' failure to consult with Decedent's treating physicians, including Dr. William Esper, Decedent's neurologist who had treated Decedent since 2014 for his Huntington's Disease and dementia;

    **e.** Beacon Light's Defendants' failure to communicate Decedent's Huntington's Disease and his secondary behaviors caused by it or its gravity to Jail staff and appropriate corrections officers;

    **f.**   The Beacon Light Defendants' failure to evaluate Decedent's need for medication, and their failure to recommend or prescribe the appropriate form of medication on a timely basis;

    **g.**   The Beacon Light Defendant Roederer's failure to consult with the Jail's prison doctor after the July 22, 2016 visit to recommend that Decedent needed to be transferred to a more appropriate medical facility due to his serious mental health and medical needs;

    **h.**   Beacon Light Defendant John's delay for months in providing a second opinion for forced medications and further delay of months placing an order for the injections of Haldol; and

**136.**    The above-averred negligence of Beacon Light and Beacon Light Defendants resulted in Decedent's injuries and damages averred hereinabove.

**XII. COUNT SIX**
**PROFESSIONAL NEGLIGENCE**
**PLAINTIFF V. SENECA MEDICAL CENTER, LLC AND BEALS, III**

**137.**    Plaintiff incorporates paragraphs 1 through 136 above as if fully set forth herein.

**138.**    At all times relevant, Seneca Medical Center acted by and through its employees, agents, servants and ostensible agents including, but not limited to, Norman K. Beals III.

**139.**    At all times relevant, Defendant Seneca Medical Center, its agents, servants, employees and ostensible agents, including Norman K. Beals, III, owed Decedent a duty of reasonable care.

**140.**    Because the individual Defendant Beals, III was acting as an agent, servant, and/or employee of Defendant Seneca Medical Center and because he was acting within the scope and course of his employment and under the direct control and supervision of Defendant Seneca Medical Center, Defendant Seneca Medical Center is liable to Plaintiff on the basis of *Respondeat superior* liability.

**141.**    During the course of Decedent's incarceration from February 22, 2016 through January 31, 2017, Defendants deviated from the standard of care in the following particulars:

    **a.**  Seneca Medical Center Defendant's failure to recommend any mental health treatment;

    **b.**  In failing to ever have Decedent examined, evaluated or monitored by the Defendant Beals or by another prison doctor employed by Seneca Medical Center;

    **c.**  In failing to recommend that Decedent undergo a mental health assessment when Defendants knew or should have known of Decedent's Huntington's Disease and dementia to address his special medical, mental health, and nutritional needs;

    **d.**  In failing to review Decedent's initial intake records documenting his Huntington's Disease history and vulnerabilities;

    **e.**  In failing to obtain and review Decedent's past medical treatment records;

    **f.**  In failing to consult with Decedent's past healthcare providers, including his neurologist;

    **g.**  In failing to conduct a proper, full and complete medical evaluation of Decedent;

    **h.**  In failing to provide proper medical treatment or put in place a plan of action that would have addressed Decedent's Huntington's Disease and dementia vulnerabilities and prevented his pain and suffering;

    **i.**  In failing to evaluate, to order and to monitor that Decedent's nutritional needs due to his Huntington's Disease were being satisfied;

    **j.**  In failing to order a "swallowing screening" for Decedent in order to properly evaluate whether he could swallow solid foods and medications.

    **k.**  In failing to have Defendant Beals monitor whether Decedent was receiving his medications.

**142.**    As the direct and proximate result of the negligence of Defendants, Decedent suffered the aforesaid injuries and his release from the Jail to an appropriate facility for his medical and mental health needs was delayed until on or about February 21, 2017.

### XIII. COUNT SEVEN

**143.**    Plaintiff incorporates paragraphs 1 through 143 above as if fully set forth herein.

**144.**     Defendants Beacon Light, Seneca Medical Center, Dr. Roederer, Dr. John, and Dr. Beals were deliberately and/or recklessly indifferent to Decedent's serious medical and mental health needs and thereby violated Decedent's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and his right to Due Process of Law under the Fifth and Fourteenth Amendments to the United States Constitution.

**145.**     As a direct and proximate result of the Defendants' conduct, Decedent sustained the aforesaid injuries and harms stated above.

**XIV. COUNT EIGHT**
**SURVIVAL**
**PLAINTIFF V. ALL DEFENDANTS**

**146.**     Plaintiff incorporates paragraphs 1 through 145 above as if fully set forth herein.

**147.**     Plaintiff claims the right to prosecute this action and recover on behalf of the Estate of James Kuzminski all damages allowable under Pennsylvania's Survival Act, 20 Pa. C.S.A. § 3373, 42 Pa. C.S.A. § 8302.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff demands the following relief jointly and severally against all of the Defendants:

     **A**.     Injunctive relief;

     **B**.     Compensatory damages;

     **C**.     Punitive damages against the individual Defendants;

     **D**.     Costs and interests and attorney's fees; and

     **E**.     Such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Respectfully Submitted,

KUBINSKI, SUSKO & SCHONTHALER

By: s/Paul J. Susko
    Paul J. Susko, Esquire
    Pa. Supreme Court I.D. No. 25995
    502 Parade Street
    Erie, PA 16507
    (814) 455-7612
    (814) 461-8585

DATED: 7/16/18    paul@ksslawfirm.com

    *Attorney for Plaintiff*