# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FAWN KUZMINSKI, Administrator )
of the Estate of JAMES KUZMINSKI, )
Deceased, )
                               )     **Case No. 1:18-cv-57-SPB**
              **Plaintiff,** )
                               )
              **v.** )
                               )
WARREN COUNTY, *et al.,* )
                               )
             **Defendants.** )

## MEMORANDUM OPINION

This civil action was filed by Plaintiff Fawn Kuzminski ("Plaintiff"), the administrator of the estate of James Kuzminski ("Decedent"), as the result of events that transpired while Decedent was incarcerated at the Warren County Jail. The operative pleading is the Second Amended Complaint ("SAC," ECF No. 54). The named Defendants include: Warren County; Warden Kenneth Klakamp; Deputy Warden Jon Collins; Counselor Laura McDunn; Seneca Medical Center, LLC ("SMC")[1]; Norman K. Beals, III, M.D., who at all relevant times was SMC's Medical Director; Children's Center for Treatment and Education d/b/a/ Beacon Light Behavioral Health Systems, an affiliate of Journey Health System ("Beacon Light")[2]; Ernesto Roederer, M.D., a psychiatrist employed by Beacon Light; and John P. John, M.D., a psychiatrist and Outpatient Clinical Medical Director for Beacon Light. In her eight-count pleading, Plaintiff asserts a variety of claims against the Defendants, including – in relevant part – claims under 42

---

[1] SMC is a Pennsylvania corporation that was contractually engaged, at all relevant times, to provide medical services to Warren County Jail inmates. SAC ¶17.

[2] Beacon Light is a Pennsylvania corporation that was contractually engaged, at all relevant times, to provide mental health services to Warren County Jail inmates. SAC ¶20.

U.S.C. §1983 and state law claims based on alleged professional negligence. The Court has

subject matter over these claims based on 28 U.S.C. §§1331, 1343(a), and 1367(a).

Pending before the Court are motions filed by Defendants SMC (ECF No. 55), Beals

(ECF No. 57), and John and Roederer (ECF No. 59) to dismiss the claims asserted against them.

Defendant Beacon Light joins in these motions (ECF No. 61). Also pending before the Court is

the Plaintiff's motion to further amend her pleading so as to add nine individual defendants who

were employed as corrections officers at the Warren County Jail during the time period in

question (ECF No. 68). For the reasons that follow, Dr. Roederer's motion to dismiss will be

granted in part and denied in part. In all other respects the motions to dismiss will be denied.

Plaintiff's motion to amend will be granted in part and denied in part as discussed herein.


## I. BACKGROUND[3]

Decedent James Kuzminski was, at all times relevant to this lawsuit, a Pennsylvania

resident who suffered from Huntington's Disease. SAC ¶¶ 6, 31. Huntington's Disease is a rare

genetic disorder that leads to the progressive breakdown of nerve cells in the brain. Id. 61. The

symptoms and/or sequelae of the disease can include involuntary movement, difficulty

swallowing and breathing, cognitive limitations including memory loss and eventual dementia,

and psychiatric symptoms, including psychosis. Id. ¶62. Hunger can be a significant cause of

behavior problems in persons with Huntington's Disease because afflicted individuals generally

require a higher caloric intake, yet may be less able to identify or communicate feelings of

hunger; they may also have difficulty consuming sufficient calories because of difficulties

swallowing, feeding themselves, or staying on task. Id. ¶64.

---

[3] The following facts are derived from the Second Amended Complaint, ECF No. 54. For present purposes, the Court accepts Plaintiff's well-pled factual averments as true.

On February 22, 2016, Decedent was arrested and taken to the Warren County Jail (hereafter, "WCJ"), where he was placed in isolation. SAC ¶¶29-30. On or about March 31, 2016, Decedent pled guilty to disorderly conduct, a third-degree misdemeanor. Id. ¶59. He was subsequently sentenced to a term of incarceration of 61 days to one year. Id. ¶60.

Prior to his incarceration, Decedent had been treated by Dr. William Esper, a neurologist. SAC ¶83. Dr. Esper prescribed Haldol – a psychotropic medication – to be administered in liquid form, due to Decedent's difficulty swallowing. Id. ¶83.

At the time of his initial confinement at WCJ, Decedent was fully symptomatic and displayed obvious signs of impairment and dementia. SAC ¶¶31, 65. Among other things, Decedent was incontinent, could not communicate effectively, and could not care for himself or feed himself without assistance. Id. ¶¶9, 45, 48-49. As the result of involuntary physical movements related to his disease, Decedent required approximately 5,000 calories every day. SAC ¶55.

The day following Decedent's incarceration, Plaintiff spoke at length with Defendant McDunn, a counselor at WCJ, about Decedent's diagnosis and his resulting limitations. Id. ¶¶53-54. McDunn advised Decedent's family members that she did not know how to handle an inmate with Huntington's Disease; consequently, Decedent was placed in solitary confinement. Id. ¶33.

Decedent remained confined in isolation until his release from WCJ one full year later. SAC ¶¶30, 35. During this time, he was treated "like a caged animal." SAC ¶37. His personal hygiene was extremely poor and he was often forced to sit in his own excrement, sometimes for days at a time, as prison staff rarely cleaned his cell. Id. ¶¶40-41, 50. The lights in his cell were left on at all times. Id. ¶36. Decedent's hair, beard, and nails were never trimmed, and he rarely

got a shower. Id. ¶¶39, 51. Jail staff hosed Decedent down in the shower only infrequently, after which they took him outside without a coat or hat, even in cold weather. Id. ¶¶42, 46. Decedent would then return to his cell, shaking from the cold, his hair and beard frozen. Id. ¶46.

Although family members informed WCJ administrators about Decedent's need for additional calories, food was sometimes withheld from Decedent so that he would not make a mess in his cell. Id. ¶34. At times he could be heard crying out for food, and he consistently complained about being hungry. Id. ¶¶ 43, 57.

On July 14, 2016, Decedent was interviewed at WCJ by an outpatient therapist with Beacon Light, the designated provider of mental health services for WCJ inmates. SAC ¶¶20, 65. The therapist was unable to complete the intake process due to Decedent's cognitive and verbal decompensation and general inability to respond meaningfully to questions. Id. ¶66.

On July 22, 2016, Defendant Roederer performed a psychiatric evaluation of Decedent and diagnosed "Huntington's Chorea, Cognitive Disorder, Major Cognitive Neuro-Cognitive Disorder due to Huntington's with behavioral disturbance, Bipolar Disorder, unspecified." SAC ¶¶67, 68. Roederer was unable to complete a formal mental status examination but noted that Decedent "exhibit[ed] significant agitation and [had] apparently exhibited significant cognitive decline." Id. ¶69. He noted that only 10 to 20 percent of Decedent's Haldol medications were being administered and recommended that Decedent's medication be converted from pills to elixir due to Decedent's difficulty swallowing. Id. ¶¶71, 73. He also recommended an increase in Decedent's caloric intake. Id. ¶71. For reasons that are not spelled out in Plaintiff's pleading, Dr. Roederer's report was allegedly not shared with the staff of WCJ. Id. ¶67. In addition, Roederer allegedly failed to consult with the prison physician (presumably Dr. Beals) about

Decedent's serious deterioration and the need to transfer him to a more appropriate facility. Id. ¶72.

Notwithstanding this, Plaintiff also alleges that, following Dr. Roederer's July 22, 2016 examination, WCJ's monthly medication administration records for Decedent included the following notation:

> PLEASE TRY TO GET THESE NEW MEDS INTO HIM[.] THE NEW DR. IS TRYING TO EVENTUALLY GET HIM ON THE HALDOL INJECTION EVERY THREE WEEKS SO HE WILL BE ABLE TO GO TO A BETTER FACILITY, BUT HE HAS TO MAKE SURE HE TAKES THE MEDS AS DIRECTED[,] SO IF HE WILL NOT TAKE THE MEDICATION AT SIX AM[,] THEN TRY AGAIN AT 12:00[.] IF HE WILL NOT TAKE THEM AT BEDTIME[,] THEN TRY AT 1700[,] BUT PLEASE TRY . . . THANK YOU.

SAC ¶75.

On September 19, 2016, Defendant John visited Decedent at the WCJ for the purpose of rendering a second psychiatric opinion in connection with efforts to force Decedent to take his medications. SAC ¶78. The SAC does not allege any details concerning this examination. It is alleged, however, that Dr. John faxed a letter to WCJ some three months after his visit, on December 20, to order Haldol injections for the Decedent. Id. ¶79. Conflicting jail records suggest that Decedent's first injection occurred either in the last week of December 2016 or in late January 2017. Id. ¶80.

In the interim, Decedent was scheduled to be transported from WCJ on October 19, 2016 to see Dr. Esper on an outpatient basis; however, this visit did not occur, as Decedent had an encountered with unspecified prison officials that resulted in him sustaining injuries and being returned to his isolation cell. SAC ¶¶89-90.

At the conclusion of his maximum prison term, Decedent was transferred to Warren General Hospital for involuntary commitment. SAC ¶92. Eventually, Decedent was transferred to Rosemont Care & Rehabilitation Center in Bryn Mawr, Pennsylvania, where he continued to receive care and treatment until his death on January 26, 2018, at the age of 57. Id. ¶¶6, 95.

According to the SAC, the Decedent's condition deteriorated during the twelve months that he was kept in solitary confinement, and he suffered physical and emotional injuries as a result. SAC ¶¶82, 93, 98. While the Decedent was at the WCJ, his weight was not monitored, no lab tests were ordered, and his vital signs went unchecked. Id. ¶82. Because no screening test was ordered to assess his ability to swallow, the Decedent's difficulties with ingesting food and medication were allegedly prolonged, thus delaying his transfer to another, more appropriate treatment facility. Id. ¶86.

Based on these alleged events, Plaintiff has asserted eight separate causes of action against the various Defendants. For present purposes, the relevant counts are: Count V, which asserts claims of professional negligence against Defendants Beacon Light, John, and Roederer (collectively, the "Beacon Light Defendants"); Count VI, which asserts claims of professional negligence against SMC and Beals (collectively, the "Seneca Defendants"); and Count VII, which asserts claims under 42 U.S.C. §1983 against both the Beacon Light and Seneca Defendants (collectively, the "Moving Defendants"). Also relevant is Plaintiff's prayer for punitive damages against all of the Moving Defendants.

Through their separate motions, each of the Moving Defendants requests the dismissal of Count VII for failure to state a claim upon which relief can be granted.[4] They also seek to strike

---

[4] Defendant Beals also moves to dismiss Count III, which asserts claims under 42 U.S.C. §1983 against "all jail individual defendants." Insofar as Plaintiff has confirmed that Count III is not directed against Beals, *see* ECF No. 66 at 5, his motion to dismiss this count will be denied as moot.

Plaintiff's prayer for punitive damages on the grounds that it is not supported by the allegations in the complaint. Finally, they request that this Court decline to exercise supplemental jurisdiction over the professional negligence claims in Counts V and VI. Plaintiff has filed her opposition to these motions and, consequently, the issues raised by the Moving Defendants are sufficiently joined and ripe for adjudication.

## II. DEFENDANTS' MOTIONS TO DISMISS

### A. Standard of Review

Defendants' motions are brought under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The latter rule provides a defense for failure to state a claim upon which relief can be granted. "When considering a Rule 12(b)(6) motion, we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 526–27 (3d Cir. 2018) (internal quotation marks and citations omitted). In order to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Rule 12(b)(1) recognizes a defense based upon a failure of subject matter jurisdiction. Relevantly, when a facial attack on subject matter jurisdiction is raised based upon a perceived deficiency in the pleadings, the court must only consider the allegations on the face of the

complaint, taken as true, and any documents referenced in the complaint, viewed in the light most favorable to the plaintiff. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n.*, 549 F.3d 884, 891 (3d Cir. 1977)); *Turicentro, S.A. v. American Airlines, Inc.*, 303 F.3d 293, 300 (3d Cir. 2002). "The plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." *Stalley v. Catholic Health Initiatives,* 509 F.3d 517, 521 (8th Cir. 2007) (citing *Twombly*, 550 U.S. at 554).

B. <u>Discussion</u>

1. *Plaintiff's Claims Under 42 U.S.C. §1983 (Count VII)*

The Court will first address Defendants' motions to dismiss Plaintiff's claims under 42 U.S.C. §1983, which are set forth in Count VII of the SAC. To state a viable §1983 claim, a plaintiff must allege that the defendant, while acting under color of state law, engaged in conduct that deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pa,* 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Because §1983 liability cannot be predicated on *respondeat superior*, the plaintiff must plead each individual defendant's personal involvement in the alleged wrongdoing. *Evancho v. Fisher*, 423 F.3d 344, 353 (3d Cir. 2005). Defendants in supervisory positions may be held liable under §1983 in one of two ways. "First, liability may attach if they, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 319 (3d Cir. 2014), *overruled on other grounds sub nom. Taylor v. Barkes*, ___ U.S. ___, 135 S. Ct. 2042 (2015). Alternatively, a supervisory official may be liable "if he or she participated in

violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* (internal quotation marks and citation omitted).

A private corporation providing medical services at a state correctional facility can be held liable under § 1983 if the entity engaged in "a policy or custom that resulted in the alleged constitutional violations." *Palakovic v. Wetzel*, 854 F.3d 209, 232 (3d Cir. 2017) (citing *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003)). For purposes of establishing §1983 liability, "customs" include practices "so permanent and well settled as to constitute a custom or usage with the force of law." *Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 198 (3d Cir. 2018) (internal quotation marks and citation omitted). The conduct of a policymaker may be the result of a policy or custom "where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious and the inadequacy of existing practices so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Natale*, 318 F.3d at 584 (internal quotation marks omitted) (alteration in the original).

In this case, Plaintiff alleges that the Moving Defendants' failure to render appropriate medical care violated the Decedent's rights under the Eighth and Fourteenth Amendments. To state an Eighth Amendment claim based on inadequate medical treatment, a plaintiff must allege that the defendants were deliberately indifferent to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976); *Henry v. Warden James T. Vaughn Corr. Ctr.,* 764 F. App'x 129, 131 (3d Cir. Mar. 1, 2019). The "deliberate indifference" prong is subjective in

nature, while the "serious medical needs" prong is objective. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (citations omitted).

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A plaintiff can plead the requisite "'deliberate indifference'" by alleging that the defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [that they] also [drew] the inference.'" *Henry*, 764 F. App'x at 131 (quoting *Farmer*, 511 U.S. at 837) (alterations in the original). Where prison officials know of the prisoner's serious medical need, deliberate indifference is found where the official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (internal citation omitted).

To the extent Plaintiff's claims are predicated upon alleged mistreatment during the time that the Decedent was a pretrial detainee, the Fourteenth Amendment's Due Process Clause supplies the relevant governing standard. *See Natale,* 318 F.3d at 581. As a practical matter, however, the courts apply the same legal standards relative to a Fourteenth Amendment claim as would be applied to an Eighth Amendment claim. *See id.* ("In previous cases, we have found no reason to apply a different standard than that set forth in *Estelle* (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) when evaluating whether a claim for inadequate medical care by a pre-trial detainee is sufficient under the Fourteenth Amendment.") (citing *Boring v. Kozakiewicz*, 833 F.2d 468, 472 (3d Cir.1987) (footnote omitted).

a) Dr. Beals and SMC

Dr. Beals and SMC seek dismissal of Count VII on the grounds that Plaintiff's averments fail to allege any conduct on their part that could amount to deliberate indifference to the Decedent's serious medical needs. Moreover, these Defendants maintain that there are no allegations in the SAC to suggest that Dr. Beals ever knew of, or interacted with, Decedent during his term of incarceration at WCJ.

Insofar as the claim against Dr. Beals is concerned, the Court notes that Plaintiff has, in fact, pled his awareness of, and indifference to, the Decedent's serious medical needs. SAC ¶145. Such a conclusion is not entirely implausible, given the very unique medical problems that Decedent allegedly faced during his full year of confinement and given Beals's status as both the prison physician and medical director for SMC. Id. ¶18.[5] Accepting as true that Beals was aware of the Decedent's medical diagnosis and related limitations – which allegedly included difficulty eating, toileting, ingesting medication, and communicating, a deliberate decision on Beals's part to refrain from rendering medical treatment could plausibly amount to deliberate indifference because, absent treatment, the Decedent's condition might well be expected to lead to "substantial and unnecessary suffering, injury, or death." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Accordingly, Plaintiff has adequately pleaded a claim against Dr. Beals for deliberate indifference to the Decedent's serious medical needs.

---

[5] The Court acknowledges Plaintiff's averment that Dr. Roederer failed to consult with Dr. Beals following his July 2016 examination, so any awareness on the part of Dr. Beals to the Decedent's serious medical needs presumably would have to had come through other channels. To the extent that Dr. Beals denies knowing about Decedent's condition, he will have an opportunity to flesh this issue out through discovery and additional motions practice. For present purposes, however, Plaintiff has pled "'enough facts to raise a reasonable expectation that discovery will reveal evidence of [this] necessary element'" of his claim. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (quoting *Twombly*, 550 U.S. at 556). No more is required at this early juncture of the proceedings.

In addition, Plaintiff has plausibly alleged that SMC maintained a policy of constitutionally inadequate medical care vis-a-vis inmates like the Decedent who, unlike most inmates, could not effectively communicate even his most basic needs and could only be effectively treated through transfer to an appropriate health care facility. SAC ¶¶145-46. Accepted as true, Plaintiff's well-pled averments paint a picture of an inmate with profound and obvious physical, mental, and cognitive problems, who could not advocate or care for himself and who essentially "fell through the cracks" of the prison health care system. Consistent with that theory, Plaintiff has alleged that SMC, with deliberate indifference to the rights of its prisoner patients, "failed to develop and implement policies, practices and procedures to ensure that inmates at [WCJ] would receive appropriate care for serious illnesses, including transfer to an appropriate facility properly equipped and staffed to treat and care for inmates with serious illnesses who were unable to care for themselves." SAC ¶146. Relatedly, Plaintiff asserts SMC's failure to properly train, supervise, and discipline its medical staff so as to ensure proper medical treatment for inmates, like Plaintiff, who have serious medical needs that cannot be met inhouse. Id. ¶147. The record in this case is still undeveloped, and it is likely that fact discovery will elucidate what protocols (if any) were in place to ensure that prisoners with serious medical needs who could not advocate for themselves would receive appropriate treatment, whether particular staff members breached such protocols, and whether the Decedent's needs went unmet as the result of deliberate indifference on the part of prison staff, medical staff, or both. Discovery will also reveal whether Dr. Beals, as Medical Director for SMC, played any role in establishing SMC's policies relative to the dispensation of medical care to WCJ's prisoners. *See Barkes v. First Corr. Med., Inc.,* 766 F.3d 307, 3019 (3d Cir. 2014), *overruled on other grounds sub nom. Taylor v. Barkes,* -- U.S. --, 135 S. Ct. 2042 (2015) (noting that supervisory liability

may attach if the defendant supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm") (alteration in the original) (internal quotation marks and citation omitted).

At this juncture, the Court need only "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *DeGennaro v. Am. Bankers Ins. Co. of Fla.*, 737 F. App'x 631, 635 (3d Cir.), *cert. denied*, 139 S. Ct. 459 (2018). Because a fair reading of the SAC supports a plausible inference of liability on the part of SMC and Dr. Beals, their respective motions to dismiss Count VII of the SAC will be denied.

### b) Dr. Roederer, Dr. John, and Beacon Light

The Court next turns to the claims against the Beacon Light Defendants. Like SMC and Dr. Beals, these Defendants contend that the SAC is devoid of facts that could support a finding of deliberate indifference on their part to the Decedent's serious medical needs.

With respect to Dr. Roederer, the SAC alleges that he performed a psychiatric evaluation of the Decedent on July 22, 2016, within eight days after Decedent was interviewed by a Beacon Light therapist. Dr. Roederer noted Decedent's agitation and reports of Decedent's significant cognitive decline and observed that only 10 to 20 percent of Decedent's psychotropic medication was being administered successfully. As Plaintiff acknowledges, "Dr. Roederer made recommendations to Warren County Jail that, among other items, Decedent's medication be converted form pills to elixir because of Decedent's difficulty in swallowing[.]" SAC ¶71. Dr. Roeder also "encouraged staff at the Jail to increase Decedent's caloric intake because patients with Huntington's often require double the caloric intake because of the Disease and the energy expenditure." *Id.* The prison medication administration records reflect Dr. Roederer's advice that staff remain diligent in trying to administer the Decedent's medication on a regular basis.

SAC ¶75. They also reflect his plan to get Decedent on Haldol injections so that the Decedent could eventually be moved "to a better facility[.]" *Id.* The Decedent was not seen again by Dr. Roederer, but was examined approximately two months later by Dr. John.

In light of the foregoing allegations, the Court cannot say that Plaintiff has pled deliberate indifference on the part of Dr. Roederer to the Decedent's serious medical needs. Plaintiff bases her claim on the fact that Dr. Roederer: a) did not consult directly with Dr. Beal about the Decedent's deterioration and the need to move him to a more appropriate facility; (b) failed to follow up with Decedent to ensure that his medications were being successfully administered, and (c) failed either to consult with Dr. Esper or to request a review of Dr. Esper's medical records. But these shortcomings demonstrate, at most, arguable negligence on the part of Dr. Roederer, which is not enough to state a constitutional violation. *See Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015) (noting that "[n]either negligence nor medical malpractice is sufficient to state a claim for deliberate indifference" under the Eighth Amendment); *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) ("Allegations of medical malpractice are not sufficient to establish a Constitutional violation.").

The Court reaches a different conclusion as to Dr. John. According to the SAC, the Decedent was examined by Dr. John on September 19, 2016 "for the purpose of rendering a second psychiatric opinion in order to force Decedent to take his medications." SAC ¶78. However, nothing was done by Dr. John until approximately three months later, on December 20, 2016, at which time Dr. John allegedly faxed a letter to WCJ for the purpose of ordering Haldol Decanoate injections. The Complaint can be read as alleging that no injections were administered until late January 2017, shortly before the expiration of the Decedent's maximum prison term. Accepting these averments as true, and construing the SAC in the light most

favorable to the Plaintiff, a factfinder could plausibly infer that Dr. John's 3-to-4-month delay in following up on the Decedent's medication regime constituted deliberate indifference to his serious medical needs. The SAC establishes that the Decedent was scheduled to see Dr. Esper in October 2016, and that visit never materialized due to events involving non-medical prison staff. It is not clear what role, if any, Dr. John had in scheduling the aborted examination by Dr. Esper, and it may well be that further record development will dispel any inference of deliberate indifference on Dr. John's part. For present purposes, however, a plausible Eighth Amendment violation has been pled.

With respect to Plaintiff's claim against Beacon Light, the Court will deny the motion to dismiss Plaintiff's §1983 claim, largely for the reasons discussed previously in relation to Plaintiff's claim against SMC. The SAC alleges the Decedent's affliction of a disease that was progressive in nature and steadily impaired his mental functioning during his time at WCJ. The conditions of Decedent's confinement allegedly involved a lack of any mental health care treatment for a period of approximately five months, during which time the Decedent remained in isolation under conditions that caused further mental decompensation. Despite the Decedent's obvious limitations, including difficulty ingesting psychotropic medications, it is alleged that he did not receive medical injections until nearly one year after his initial incarceration. And despite the obvious incapability of WCJ to meet the Decedent's medical and mental health needs, the Decedent was not transferred to a suitable treatment facility for nearly one year. Based on these circumstances, Plaintiff has plausibly pled that Beacon Light, with deliberate indifference to the rights of its prisoner patients, "failed to develop and implement policies, practices and procedures to ensure that inmates at [WCJ] would receive appropriate care for serious illnesses, including transfer to an appropriate facility properly equipped and staffed to

treat and care for inmates with serious illnesses who were unable to care for themselves." SAC ¶146. As discussed, it remains to be seen through discovery whether Beacon Light had protocols in place to ensure appropriate treatment for prisoners with serious mental health needs who could not advocate or care for themselves, and whose treatment needs required transfer to a more suitable facility. If the allegations in the SAC are credited, Beacon Light did not, and the absence of such protocols plausibly constitutes deliberate indifference. Accordingly, Plaintiff has stated a cognizable §1983 claim against Beacon Light.

### 2. Plaintiff's Claims Based on Professional Negligence (Counts V and VI)

The Moving Defendants also seek the dismissal of Counts V and VI, which set forth claims under Pennsylvania law sounding in professional negligence. Defendants contend that, in the absence of a pending federal claim, this Court should decline to exercise supplemental jurisdiction over the state law claims.

Under 28 U.S.C. §1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction[.]" As the statutory language makes clear, this provision is discretionary. Nevertheless, federal courts within this judicial circuit have often declined to exercise supplemental jurisdiction in the absence of a pending federal claim. *See, e.g., Cito v. Bridgewater Twp. Police Dep't.*, 892 F.2d 23, 25–26 (3d Cir.1989) ("If it appears that the federal claim is subject to dismissal under Fed. R. Civ. P. 12(b)(6), then the court should ordinarily refrain from exercising jurisdiction in the absence of extraordinary circumstances."); *Eberts v. Wert*, 1993 WL 304111, at *5 (E.D. Pa. Aug. 9, 1993) (same).

Here, the Court has declined to dismiss the federal §1983 claims asserted against Beal, SMC, Roederer, and Beacon Light. Accordingly, the Defendants' arguments in favor of dismissing the state law negligence claims is moot as it relates to these Defendants.

With respect to Dr. Roederer, the Court is dismissing Plaintiff's only federal claim against him, for the reasons previously discussed. However, at least at this point in the litigation, considerations of judicial economy, convenience, fairness, and comity all weigh in favor of the Court retaining supplemental jurisdiction over the negligence claim against Dr. Roederer. Accordingly, the Moving Defendants' motion to dismiss the state law claims at Counts V and VI will be denied.

### 3. *Plaintiff's Prayer for Punitive Damages*

The Moving Defendants also request dismissal of the Plaintiff's prayer for punitive damages. "Punitive damages in § 1983 cases are available where the defendants have acted with a 'reckless or callous disregard of, or indifference to, the rights and safety of others.'" *Mitchell v. City of Phila.,* 344 F. App'x 775, 780 (3d Cir. 2009) (quoting *Keenan v. City of Phila.,* 983 F.2d 459, 469–70 (3d Cir.1992)). "Punitive damages are to be 'reserved for special circumstances,' . . . in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." *id.* (quoting *Keenan,* 983 F.2d at 470). This standard has been equated to a deliberate indifference to a substantial risk of serious harm. *See Stafford v. Wenerowicz*, No. CV 17-4010, 2018 WL 6652844, at *5 (E.D. Pa. Dec. 18, 2018) (citing *Farmer*, 511 U.S. at 836 (holding that "acting ... with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk")); *see also Feldman v. Phila. Hous. Auth.*, 43 F.3d 823, 833 (3d Cir. 1994) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983) (finding that punitive damages may be assessed in a § 1983 action

17

when the defendant acted with evil motive or intent, or with reckless or callous indifference to the plaintiff's federally protected rights)).

As to Defendant Roederer, Plaintiff has failed to allege deliberate indifference as would support of a viable §1983 claim. Accordingly, the claim for punitive damages cannot stand. See *Stafford*, 2018 WL 6652844, at *5 ("Since Plaintiff has failed to allege deliberate indifference against CCS in his Amended Complaint, Plaintiff also has failed to allege reckless indifference for punitive damages at this stage."). As to all of the remaining Moving Defendants, the motions to strike Plaintiff's request for punitive damages will be denied as premature.

### III. PLAINTIFF'S MOTION TO AMEND

Finally, the Court will consider Plaintiff's motion to file a Third Amended Complaint ("TAC"). Plaintiff's proposed amendment would add a §1983 claim against some nine different prison staff members for their alleged deliberate indifference to the Decedent's federal constitutional rights. These proposed new Defendants include Sergeant Ryan Tipton and Corrections Officers Dana Cindrich, Joshua Warmath, Steven Belcher, Shaughn McGhee, Dalton Maze, Andrew O'Donnell, Michael Rogers, and Christopher Riche.

A request for leave to amend is governed by Federal Rule of Civil Procedure 15, which generally conditions amendment on the court's leave or the opposing party's written consent. *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017); *see* Fed. R. Civ. P. 15(a)(2). Courts are directed to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This liberal amendment regime helps effectuate the "general policy embodied in the Federal Rules favoring resolution of cases on their merits." *Mullin*, 875 F.3d at 149 (citation omitted). Denial of leave to amend can be based on factors such as undue delay, bad faith or dilatory

motive on the part of the movant; repeated failure to cure deficiencies by amendments previously allowed; prejudice to the opposing party; and futility. *Mullin*, 875 F.3d at 149 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). These factors are not exhaustive, and the district court may consider other equities; however, "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Id.* (citing *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006)).

Here, Plaintiff's motion for leave to amend is opposed by Defendants Warren County, Kenneth Klakamp, John Collins, and Laura McDunn (the "County Defendants") on the grounds that: (a) the proposed pleading does not allege each new Defendant's personal involvement in the alleged wrongdoing; (b) any official capacity claims are redundant of the claim already asserted against Warren County; (c) Plaintiff has engaged in undue delay relative to the requested amendment; (d) the proposed amendment is being interposed in bad faith as a means to gain leverage over the individual Defendants and thereby induce settlement; and (e) the County Defendants would be unfairly prejudiced by having to file a fourth responsive pleading.

Under the law of this circuit, allegations of a defendant's participation or actual knowledge and acquiescence in alleged wrongdoing must be made "with appropriate particularity." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). In her proposed TAC, Plaintiff reiterates the averments concerning the Decedent's deplorable conditions of confinement and further alleges that:

- the Decedent was incarcerated at WCJ under conditions posing a substantial risk of harm to his well-being (as spelled out elsewhere in the complaint) (TAC ¶125);

- Per the orders of Deputy Warden Collins, Sergeant Tipton issued a written directive on June 17, 2016 that Decedent was to receive a shower every night, he was not permitted to refuse his shower, he was to be given a clean jumpsuit after every shower, his cell was to be cleaned during his shower time, and his garbage was to be removed after every meal (id. ¶127);

- Because of his incontinence, Decedent needed to wear adult diapers; however, as a regular course of conduct during the entirety of his one-year incarceration in solitary confinement, Decedent was denied regular showers and clean clothing (id. ¶126);

- As a continuous course of conduct, the Defendant Corrections Officers received, but failed to comply with, the directive that Decedent receive a shower and a clean jumpsuit every night (id. ¶128);

- Because Decedent did not receive a daily shower, his cell was not cleaned on a daily basis and the garbage in his cell was not regularly disposed of (id);

- As a continuous course of conduct, Sergeant Tipton failed to ensure the Correction Officers' compliance with Deputy Warden Collins's directive regarding nightly showers, clean jumpsuits, and the cleaning of Decedent's isolation cell (id. ¶129);

- As a result, Decedent was deprived of minimal civilized measures of life's necessities (id. ¶130);

- By failing to adhere to, and properly enforce, Deputy Warden Collins's directive, the Defendant Corrections Officers and Sergeant Tipton acted with deliberate indifference to the obvious risk of harm that Decedent faced relative to his health and safety (id. ¶132); and

- Defendants' actions violated Decedent's right under the Eighth Amendment to be free from cruel and unusual punishment, his Fourteenth Amendment right to substantive due process, and his Fourteenth Amendment right to equal protection of the laws (id. ¶¶131, 133, 135).

In this Court's estimation, the foregoing allegations are sufficient to establish the new Defendants' personal involvement in contributing to the Decedent's allegedly unconstitutional conditions of incarceration. From the factual content that Plaintiff has pled, it is reasonable to infer that each of the named corrections officers was assigned to help supervise and manage the Decedent's confinement. Under federal pleading standards, it is not necessary for Plaintiff to identify the exact time and date of every missed shower or the specific days on which a particular Defendants failed to clean the Decedent's cell. To the extent that discovery reveals deficiencies in proof relative to Plaintiff's claims, those deficiencies can be addressed at the Rule 56 stage. For present purposes, the Court is not persuaded that the proposed amendments fail to state a viable §1983 claim.

Defendants' remaining objections also lack merit. It is true that Plaintiff's official capacity claim against Sergeant Tipton may be redundant of the claim already being asserted against Warren County. TAC ¶25; *see Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985)

(internal quotation marks and citation omitted) (Official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent."). However, the remainder of the Correctional Officer Defendants are being sued only in their individual capacities. TAC ¶¶17-24. Therefore no redundancy arises.

The Court is also not persuaded that the proposed amendment should be denied on the basis of undue delay. Defendants acknowledge that discovery answers were provided in September of 2018, and the motion to amend was filed in February 2019. ECF No. 71, ¶15(f); ECF No. 68. As explained by Plaintiff, ascertaining the identity of the Defendant Corrections Officers took time, even after the discovery responses were provided. A delay of approximately four months, especially in this relatively early stage of litigation, is not so great as to warrant denial of leave to amend, particularly in light of Rule 15's liberal policy toward amendment.

Further, the Court is not convinced that Plaintiff's proposed amendment is being proffered in bad faith. On the contrary, the amendment is based upon information received by counsel through the exchange of discovery. This is precisely what Rule 11 and Rule 15 contemplate. And, to the extent that being named in a lawsuit creates an incentive on the part of the Corrections Officers to consider settlement, this is true of any individual named in a lawsuit. Such is the nature of litigation, and the incentive that this lawsuit places upon the Defendants to settle is no more unfair than the risk it places on Plaintiff that the costs and fees she expends may ultimately yield no recovery.

As to Defendants' final point, the fact that they will have to file a fourth responsive pleading is not so onerous or unfairly prejudicial as to justify denial of leave to amend. Nor does the proposed amendment prejudice the existing County Defendants in substantive terms: if the Correction Officer Defendants are found liable for failing to adhere to Deputy Warden Collins's

directive, as is alleged, there can be no resulting *respondeat superior* liability on the part of the County, Warden Klakamp, Deputy Warden Collins, or Counselor McDunn.

## IV. CONCLUSION

Based upon the foregoing discussion, the motion to dismiss filed by Dr. John and Dr. Roederer will be granted insofar as it relates to Plaintiff's §1983 claim against Dr. Roederer and Plaintiff's request for punitive damages against Dr. Roederer. In all other respects, the motion will be denied. The motions to dismiss filed by Dr. Beals, Seneca Medical Center, and Beacon Light, will all be denied. Plaintiff's motion to amend will be denied insofar as it relates to the §1983 claim asserted against Sergeant Ryan Tipton in his official capacity; in all other respects, the motion to amend will be granted.

An appropriate order follows.

/s/ Susan Paradise Baxter

SUSAN PARADISE BAXTER
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FAWN KUZMINSKI, Administrator )
of the Estate of JAMES KUZMINSKI, )
Deceased, )   **Case No. 1:18-cv-57-SPB**
 )
   **Plaintiff,** )
 )
  **v.** )
 )
WARREN COUNTY, *et al.,* )
 )
   **Defendants.** )

## O R D E R

  NOW, this 30th day of September, 2019, for the reasons set forth in the accompanying

Memorandum Opinion,

  IT IS ORDERED that the Motion to Dismiss filed by Defendants Ernesto Roederer, M.D.

and John P. John, M.D., ECF No. [59], shall be, and hereby is, GRANTED insofar as it relates to

Plaintiff's claim against Dr. Roederer in Count VII of the Second Amended Complaint and

Plaintiff's request for punitive damages against Dr. Roederer.  In all other respects, the motion

shall be, and hereby is, DENIED.

  IT IS FURTHER ORDERED that the Motion to Dismiss filed by Defendant Norman K.

Beals III, M.D., ECF No. [57], shall be, and hereby is, DENIED.

  IT IS FURTHER ORDERED that the Motion to Dismiss filed by Defendant Seneca

Medical Center, LLC, ECF No. [55], shall be, and hereby is, DENIED.

IT IS FURTHER ORDERED that the Motion to Dismiss filed by Children's Center for Treatment and Education, d/b/a Beacon Light Behavioral Health Systems, an affiliate of Journey Health System, ECF No. [61], shall be, and hereby is DENIED.

AND IT IS FURTHER ORDERED that Plaintiff's Motion to Amend Second Amended Complaint, ECF No. [68], shall be, and hereby is, DENIED only insofar as it relates to the proposed claim to be asserted against Sergeant Ryan Tipton under 42 U.S.C. §1983 in his official capacity. In all other respects, the Plaintiff's Motion to Amend shall be, and hereby is, GRANTED. Plaintiff is hereby directed to file her amended pleading, in conforming with this Memorandum Opinion and Order, on or before October 18, 2019.

IT IS SO ORDERED.


SUSAN PARADISE BAXTER
United States District Judge